UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JILL A. WHITCOMB,

                Plaintiff,

v.                                      Case No. 17-CV-14

ERIC D. HARGAN,
Acting Secretary of the U.S. Department of Health
and Social Services,

                Defendant.

## PLAINTIFF'S PETITION FOR FEES AND COSTS

### INTRODUCTION

Plaintiff Jill A. Whitcomb ("Ms. Whitcomb"), by her undersigned counsel, respectfully requests that this Court order the Secretary of Health and Human Services ("Defendant") to reimburse the Plaintiff for her attorney's fees and costs, pursuant to the Equal Access to Justice Act ("EAJA"). Despite a Congressional mandate for timely adjudication, Defendant has sent Ms. Whitcomb on an incredible quest through the Medicare appeals system. She endured six years of litigation to obtain coverage for her life-sustaining continuous glucose monitor ("CGM") device. After losing its first argument, the Defendant pivoted and denied CGM coverage on the grounds that a CGM is not "primarily and customarily used for a medical purpose" and, therefore, is not durable medical equipment ("DME"). It did so without identifying any other purpose for a CGM. Moreover, it maintained this stance while more than 35 Administrative Law Judges ("ALJs") told the Secretary that this position was not justified, not a single authority supported the Secretary's claim, and the Secretary's own Civil Remedies Division told the Secretary that this position did

not pass the "reasonableness" test. The Secretary's position was not substantially justified and this is precisely the type of situation for which Congress enacted the EAJA statute.

## PROCEDURAL BACKGROUND

This case began in 2011 when Ms. Whitcomb requested pre-authorization for a Medtronic MiniMed CGM device. That request was denied, and Ms. Whitcomb pursued the denial of her claim through the multi-step Medicare appeals process without counsel. She was victorious before an ALJ, only to have the Medicare Appeals Council ("MAC") reverse the ALJ's decision on the grounds that an "article" barred coverage of the CGM as "precautionary." Again, representing herself, Ms. Whitcomb filed a Federal court appeal in September 2013. She was unable to secure legal counsel until March of 2014. Magistrate Judge William Duffin reversed the MAC decision and directed the Secretary to apply the appropriate legal standard to determine whether CGM is reasonable and necessary for Ms. Whitcomb or is otherwise excluded from Medicare coverage. *Whitcomb v. Burwell*, 2015 WL 3397697 (E.D. Wis. 05/26/2015). Judge Duffin denied a request for EAJA fees. 2015 WL 5254518 (E.D. Wis. 09/09/2015).

Although the statute requires the MAC to rule on a matter within 90 days, it took no action in response to the Court's 05/21/15 Order. After the matter had been pending for more than 90 days, Ms. Whitcomb requested that the MAC send the case back to the District Court. Rather than ruling on the issues, the MAC remanded the case back to the ALJ. The ALJ conducted another hearing and issued a second ruling finding that the MiniMed CGM met the definition of DME and also was reasonable and medically necessary for Ms. Whitcomb. Again, the decision was appealed, and again, the MAC did not rule within the statutory 90 days. When Ms. Whitcomb again sought to have the case returned to District Court because of the unreasonable delays, the MAC asserted that the CD of the ALJ hearing was missing and remanded it back again to the ALJ. Then the ALJ

sent back the file noting the CD of the hearing was already in the file and included a second copy. More than a year later, the MAC again reversed the ALJ, this time holding that a CGM is "precautionary" and is not "primarily and customarily used for a medical purpose."

In January 2017, Ms. Whitcomb filed suit seeking to overturn the MAC's decision on the grounds that it failed to follow the statute and was otherwise arbitrary and capricious. The Secretary persisted in his claim that a CGM is not "primarily and customarily used for a medical purpose" and raised other issues. On 10/26/2017, this Court reversed the MAC finding that it committed legal error and that its decision was arbitrary and capricious. [Dkt. 19: 10/26/17 Decision and Order at 13 and 14.] The Court found that "[t]he glucose monitor at issue here indisputably satisfies th[e] unambiguous definitional phrase" that requires DME to primarily and customarily serve a medical purpose. The Court found that the MAC's decision was arbitrary and capricious when compared to other covered DME and coverage of CGM claims for numerous other Medicare beneficiaries. [Decision at 14 and 15] The case was remanded under Sentence Four of 42 U.S.C. §405(g). [*Id* at 16]

Ms. Whitcomb, as the prevailing party in this litigation, now seeks to recoup her costs and attorneys' fees under 28 U.S.C. § 2412(d). Ms. Whitcomb seeks fees only for the period after the first District Court remand and does not seek fees that accrued while she endured the second ALJ hearing and the back-and-forth between the MAC and ALJ. However, Ms. Whitcomb's administrative odyssey is evidence of the Secretary's overall litigation strategy.

## **LEGAL STANDARDS**

A party that prevails against the United States in any litigation should be awarded "fees and other expenses, in addition to any costs . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C.

§ 2412(d)(1)(A). The purposes of the Equal Access to Justice Act are threefold: (1) to encourage private litigants to pursue their administrative and civil actions against the government and not be deterred by the cost of litigation; (2) to compensate parties for the cost of defending against unreasonable government action; and (3) to deter the federal government from prosecuting or defending cases in which its position is not substantially justified. *Berman v. Schweiker*, 713 F.2d 1290, 1297 (7th Cir. 1983); *Kholyavskiy v. Schlecht*, 479 F. Supp. 2d 897, 900 (E.D. Wis. 2007).

An EAJA fee petition must include: (1) a showing that the applicant is a prevailing party; (2) a showing that the applicant is eligible to receive an award; (3) an itemized statement containing time expended and rates charged; and (4) an allegation that the position of the United States was not substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 408 (2004). After the plaintiff makes that allegation, the government bears the burden of proving that its position was substantially justified. *Goad v. Barnhart*, 398 F.3d 1021, 1025 (8th Cir. 2005).

The EAJA awards attorneys' fees to litigants who meet the other criteria unless the government can show that its position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The EAJA does not define the term. The Supreme Court, however, has explained that "substantially justified" means "justified in substance or the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In other words, a position that is substantially justified must have some reasonable basis in law or fact. *United States v. Thouvenot, Wade & Moerschen, Inc.,* 596 F.3d 378, 381 (7th Cir. 2010).

## DISCUSSION

### I. MS. WHITCOMB WAS THE PREVAILING PARTY.

Eligibility for fees under EAJA differs based on the type of remand under 42 U.S.C. §405(g). There is a "distinction between a sentence-four remand, which terminates the litigation with victory for the plaintiff, and a sentence-six remand, which does not." *Shalala v. Schaefer*, 509 U.S. 292, 301 (1993). Under Sentence Four, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). A Sentence Four remand order which reverses a benefit denial is the type of judicial success that does establish prevailing party status. *Id.* at 301-2; *Uphill v. Barnhart*, 271 F.Supp.2d 1086, 1090 (E.D. Wis. 2003).

This Court reversed the MAC and ordered the Secretary to authorize the Medicare Advantage Plan to provide coverage for Ms. Whitcomb's CGM. [Decision at 16] Therefore, Ms. Whitcomb is the prevailing party under the EAJA.

### II. MS. WHITCOMB IS FINANCIALLY ELIGIBLE TO RECEIVE AN EAJA AWARD

EAJA fee awards are available to private litigants with a net worth not exceeding $2,000,000. 28 U.S.C. § 2412(d)(2)(B)(i). Ms. Whitcomb's *in forma pauperis* motion was granted in the prior action. [Case No. 13-CV-990-WED Dkt. #8]. She is also verifying her current financial status. [Jill Whitcomb Declaration] Ms. Whitcomb's net worth has never exceeded $2,000,000. She is eligible to receive an EAJA award.

### III. THE SECRETARY'S POSITION WAS NOT SUBSTANTIALLY JUSTIFIED

At base, all that is needed to decide this issue is the fact that for more than two years the Secretary denied Ms. Whitcomb CGM coverage on the grounds that a CGM is not "primarily and

customarily used for a medical purpose." That position is so at odds with reality that it is hard to understand how anybody could hold that belief.

The government has the burden to show that its litigation position rests upon (1) a reasonable factual basis; (2) a reasonable basis in law; and (3) a reasonable connection between the facts alleged and the legal theory. *U.S. v. Hallmark Const. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000). A court must consider the government's actions during the entire dispute. *Id.* at 1081; *Gatimi v. Holder*, 606 F.3d 344, 346 (7th Cir. 2010); see also *Quality C.A.T.V., Inc. v. NLRB*, 969 F.2d 541, 545-6 (7th Cir. 1992) ("conduct on remand was even more egregious"). For example, in *Tripoli Rocketry Ass'n., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 698 F.Supp.2d 168, 174 (D.D.C. 2010), the government's position in the initial court proceedings was substantially justified, but its legal position upon remand was not. The Court's decision to deny EAJA fees in the first round does not save the government from the consequences of an entirely new legal position. It merely set the stage for this Fee Petition.

There was and is no real dispute about the facts here. Without a CGM, Ms. Whitcomb experienced, on average, 22 hypoglycemic events per month – often rendering her unconscious and in need of emergency medical treatment. [Decision at 2]   With a CGM, Ms. Whitcomb had only two hypoglycemic events in the last six years through the date of the hearing, both of which were the result of trying to stretch her funds by using expired supplies. Ms. Whitcomb's use of a CGM has been described as "a life-saver," [Dkt. #12 – Administrative Record at 32], and "remarkably successful." [Decision at 3]   The Secretary begrudgingly acknowledged that Ms. Whitcomb "… may benefit from using a CGM …" [Dkt. #16 – Secretary's Response at 2] During the oral argument, the Secretary conceded that the CGM met all but one of the statutory elements.

[*Id*.] The Court found the ALJ's determination that CGM is medically reasonable and necessary for Ms. Whitcomb is supported by substantial evidence. [Decision at 15].

This case hinged on the meaning of a regulation. An agency's misreading of a statute or regulation is generally more egregious in the substantial justification calculation than a mistake of fact. *Id.* quoting *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591,595 (D.C. Cir. 1996). An agency's misinterpretation of its own regulations failed the EAJA test in *Halverson v. Slater*, 206 F.3d 1205, 1211-1212 (D.C. Cir. 2000). *Pierce v. Underwood,* 487 U.S. at 569, the seminal EAJA case, involved an agency's unreasonable interpretation of a statute.

The central issue in the case was whether a CGM is or is not "primarily and customarily used to serve a medical purpose." The Secretary also resorted to the word "precautionary." This Court found that the Secretary's position was arbitrary and capricious. First, it held that the asserted interpretation of the Medicare statute and regulation was unreasonable. Then it held that the denial of Ms. Whitcomb's CGM was inconsistent with numerous ALJ decisions which had approved CGMs for other Medicare beneficiaries. Either one of these conclusions is sufficient to show that the Secretary's position was not substantially justified.

**A. The Secretary's interpretation of 42 C.F.R. §414.202 was unreasonable.**

The Court found that 42 C.F.R. §414.202 was clear on its face, and the agency's interpretation was unreasonable in several ways. "*First*, the agency's interpretation defies the syntax of the definitional phrase." [Decision at 12] "*Second*, the agency's interpretation does not provide any guidance on what type of equipment will satisfy its reformulated definition. Neither the Act nor the regulations use the term "precautionary." [*Id*.] "The glucose monitor at issue here indisputably satisfies that unambiguous definitional phrase." [*Id.* at 14] The Court went to hold that the MAC's decision was arbitrary and capricious because it made no sense to deny coverage

for a CGM while approving other devices, like a self-contained pacemaker monitor, that also have a secondary medical purpose. [*Id.*]

An agency that "attempt[s] to overcome the plain language" of a statute or regulation will be unable to meet its burden of showing substantial justification. *Halverson v. Slater*, 206 F.3d at 1210. The Secretary's whole legal strategy was to put forward a novel and unsupported construction of 42 C.F.R. §414.202. The Court's characterization of the Secretary's legal position as "indisputably" wrong, arbitrary and capricious makes the substantially justified analysis easy. The Secretary's litigation position was both unreasonable and unjustified.

**B. Decisions in other cases placed the Secretary on notice.**

The outcome of other similar cases, although not dispositive, can show the lack of justification for the government's position. "[A] string of losses can be indicative . . ." *Pierce*, 487 U.S. at 566. By the time the issue reached this Court, more than 35 different Medicare ALJs had issued more than 40 decisions concluding that CGM is covered as durable medical equipment. That is, more than 35 experts in the Department's rules and regulations considered the Secretary's position, found it lacking, and told the Secretary so more than 40 times. Somewhere in the middle of that "string of losses" the Secretary should have realized that his position was not well founded. Yet the Secretary marched on.

The Secretary argued that those ALJ decisions were non-precedential and fact-specific, but the Court held that this missed the point. The "threshold question" of whether CGM is DME would not vary from one Medicare beneficiary to another. [Decision at 15] Therefore, the Court decided that it was arbitrary and capricious to find that those other CGMs were primarily and customarily used to serve a medical purpose while taking the opposite position in Ms. Whitcomb's case. [*Id.*] In *Pierce*, the presence of nine adverse decisions when the government chose its litigation strategy

was a factor in upholding the district court's determination that it was not substantially justified. 487 U.S. at 570. Here, the Secretary ignored 40 adverse decisions.

Even if all of those ALJ decisions were not quite enough, the Secretary also received a stern warning from a district court in *Finigan v. Burwell*, 189 F.Supp.3d 201 (D. Mass. 2016). The case was decided on other grounds, but the Court had this to say about the legal argument regarding the Secretary's "precautionary" concept:

> Even apart from the erroneous deference, the Secretary's construction of the term "precautionary" to include CGMS because Finigan's CGMS is "not intended to replace [Finigan's] traditional blood glucose monitoring[,]" but only to supplement it, Def.'s Mem. 15, is head-scratching, or at least under-explained. The Secretary's argument here seems to go: since Finigan uses CGMS to monitor her diabetes symptoms in conjunction with another piece of equipment, her CGMS cannot be "durable medical equipment." It is far from clear, though, why the fact of her having other equipment is dispositive: the CGMS, as used by Finigan, helped her manage her diabetic symptoms, and, while it would not qualify were the category "Primary Device Used to Treat Symptoms," her blood-testing regime seems irrelevant to whether her CGMS is "durable medical equipment." Cf. *Currier v. Leavitt*, 490 F.Supp.2d 1, 9 (D.Me. 2007) (ordering reimbursement for claimant even though the purported "durable medical equipment" did not "cure the underlying condition but only alleviate[d] its symptoms").

189 F.3d at 207 n. 6. That decision was issued on May 19, 2016 which was five and a half months before the MAC's decision in this case.

The Secretary had ample notice that its litigation strategy in this case was "indisputably" unreasonable, arbitrary and capricious because it was unsupported by the applicable law.[1] The Secretary cannot meet the significant burden it bears under EAJA. The legal positions taken during the administrative appeal process and in this Court were not substantially justified.

---

[1] Moreover, because no doctor, study, professional organization, industry party/group, or competent authority of any kind has ever opined that a CGM is not "primarily and customarily used for a medical purpose," the Secretary's legal position was also wholly without a factual basis.

{Client Documents/230394/000/00046494.DOCX}    9

Case 2:17-cv-00014-DEJ   Filed 11/30/17   Page 9 of 16   Document 23

# IV. COUNSELS' HOURLY RATES SHOULD BE ADJUSTED FOR INFLATION AND A SPECIAL FACTOR ENHANCEMENT SHOULD BE APPLIED

Once the entitlement to fees is established, a district court is to apply the factors from *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), to determine an appropriate fee. *Comm'r, INS v. Jean*, 496 U.S. 154, 161 (1990). Developing the theory of the case and drafting pleadings are fully compensable. *Webb v. Board of Education*, 471 U.S. 234, 243 (1985). Fees incurred to litigate a fee petition are also compensable. *Comm'r, INS v. Jean*, 496 U.S. at 163-65.

Ms. Whitcomb's counsel submitted declarations and billing statements. Parrish Law Offices' total fees and expenses are $52,301.60 based on customary rates. McNally Peterson's total fees and expenses are $19,299.66, again based on customary rates. However, the attorneys' fees must be recomputed using the statutory EAJA rate adjusted for inflation. Counsel from both firms are entitled to that inflation-adjusted rate. In addition, Atty. Parrish is entitled to a special factor enhancement because of her exceptional expertise.

### A. The $125/hr statutory rate must be adjusted for inflation.

The EAJA provides that attorneys should be paid at the prevailing market rate for similar services, up to $125 an hour. 28 U.S.C. § 2412(d)(2)(A)(ii). However, the statutory rate was adopted in 1996 and must be adjusted for inflation. *Sprinkle v. Colvin*, 777 F.3d 421 (7th Cir. 2015). It is not necessary to prove the unavailability of competent counsel to obtain a cost-of-living adjustment, and counsel need not demonstrate that his or her individual practice involves unusual costs that would justify a higher amount. *Id*. at 426-7. However, there must be some evidence that the inflation adjusted rate does not exceed the community's prevailing rate in similar cases by comparable lawyers. *Id.* at 429-430. A single affidavit will be sufficient. *Id.* The declarations submitted by Atty. Parrish and Atty. Pledl clearly establish that the prevailing community rates are much higher than the inflation-adjusted EAJA rates.

Courts should "generally award the inflation-adjusted rate according to the [consumer price index], using the date on which the legal services were performed." *Sprinkle v. Colvin,* 777 F.3d at 427-8 (citations omitted). "[A]ppropriate cost-of-living increases are calculated by multiplying the $125 statutory rate by the annual average consumer price index figure ... ("CPI–U") for the years in which counsel's work was performed." *Thangaraja v. Gonzales,* 428 F.3d 870, 876–77 (9th Cir.2005); see also *Am. Wrecking Corp. v. Sec'y of Labor,* 364 F.3d 321, 330 (D.C.Cir.2004) (approving use of the CPI as "inflation calculator" for EAJA cost-of-living adjustments). *Sprinkle v. Colvin* left it to the district courts to decide whether to use the national CPI or the CPI index in the metropolitan statistical area where the litigation took place. The national CPI-U has been applied in the Eastern District based on the month that the legal services were provided. *Seefeldt v. Colvin*, 2016 WL 5793683, *2 (E.D. Wis. 2016). The latest monthly CPI is at https://www.bls.gov/news.release/cpi.t01.htm. The earlier reports are archived at https://www.bls.gov/bls/news-release/cpi.htm#2017. (both sites visited 11/27/17).

The actual computation is straightforward:

$125 x (CPI-Urban when legal services were provided) / 155.7 (CPI in March 1996) = Adjusted hourly rate

The legal work in this case was performed between November 2016 and November 2017. The following table contains the monthly CPI, the adjustment factor and the adjusted hourly rates:

| Month | CPI | Adj. Factor | Adjusted Rate |
|---|---|---|---|
| November 2016 | 241.4 | 1.55 | $193.75 |
| December 2016 | 241.4 | 1.55 | $193.75 |
| January 2017 | 242.8 | 1.56 | $195.00 |
| February 2017 | 243.6 | 1.56 | $195.00 |
| March 2017 | 243.8 | 1.57 | $196.25 |
| April 2017 | 244.5 | 1.57 | $196.25 |
| May 2017 | 244.7 | 1.57 | $196.25 |
| June 2017 | 245.0 | 1.57 | $196.25 |
| July 2017 | 244.8 | 1.57 | $196.25 |
| August 2017 | 245.5 | 1.58 | $197.50 |

| | | | |
|---|---|---|---|
| September 2017 | 246.8 | 1.59 | $198.75 |
| October 2017 | 246.7 | 1.58 | $197.50 |
| November 2017 | 246.7 | 1.58 | $197.50 |

Since the November CPI will not be available until December, the October CPI is being used instead. The Department of Labor actually provides the monthly CPI to three decimal places, but rounding it to one decimal place and rounding the monthly adjustment factor to two places produces a more usable hourly rate. The adjusted hourly rates range from $193.75 to $198.75.

The following table lists monthly hours and monthly fees for Parrish Law Offices:

| Month | Adjusted Rate | Hours | Adjusted Fee |
|---|---|---|---|
| November 2016 | $193.75 | 10.67 | $2,067.31 |
| December 2016 | $193.75 | 1.67 | 323.56 |
| January 2017 | $195.00 | .50 | 97.50 |
| May 2017 | $196.25 | 5.92 | 1,161.80 |
| June 2017 | $196.25 | 36.15 | 7,094.44 |
| July 2017 | $196.25 | 1.75 | 343.44 |
| August 2017 | $197.50 | 36.35 | 7,179.13 |
| October 2017 | $197.50 | 19.87 | 3,924.33 |
| **TOTAL** | | **101.50** | **$22,191.51** |

[Debra Parrish Declaration – Exhibit A] Atty. Parrish also requests $699.99 for travel and lodging expenses that she incurred in order to present the oral argument. [*Id.*]

The following table lists hours and fees for McNally Peterson using the inflation-adjusted EAJA rate for attorney time and the firm's paralegal rate of $150.00 per hour:

| Month | Adj. Rate | Atty Hours | Atty Fee | Para Hours | Para Fee |
|---|---|---|---|---|---|
| December 2016 | $193.75 | 1.0 | $193.75 | 2.2 | $330.00 |
| January 2017 | $195.00 | 1.8 | 351.00 | 2.0 | 300.00 |
| February 2017 | $195.00 | 0.0 | 0.00 | 1.4 | 210.00 |
| April 2017 | $196.25 | 0.3 | 58.88 | 0.3 | 45.00 |
| May 2017 | $196.25 | 3.0 | 588.75 | 0.6 | 90.00 |
| June 2017 | $196.25 | 2.4 | 471.00 | 0.0 | 0.00 |
| July 2017 | $196.25 | 0.5 | 98.13 | 0.0 | 0.00 |
| August 2017 | $197.50 | 1.0 | 197.50 | 0.0 | 0.00 |
| October 2017 | $197.50 | 4.7 | 928.25 | 0.0 | 0.00 |
| November 2017 | $197.50 | 19.4 | 3,831.50 | 3.1 | 465.00 |
| **TOTAL** | | **34.1** | **$6,718.76** | **9.6** | **$1,440.00** |

[Robert Pledl Declaration – Exhibit A] Therefore, McNally Peterson requests $6,718.76 for attorney fees and $1,440.00 for paralegal fees. Paralegal fees are reimbursable under EAJA based on prevailing market rates. *Richlin Sec. Services Co., v Chertoff*, 553 U.S. 571 (2008).

McNally Peterson also seeks reimbursement for $1,662.16 in Westlaw charges. [Pledl Decl. ¶12] "[A] charge for . . . computer research is appropriate." *Hirschey v. F.E.R.C.*, 777 F.2d 1, 6 (D.C. Cir. 1985). "[E]lectronic legal research . . . [is] consistently held to be recoverable under EAJA." *Brass v. United States*, 127 Fed.Cl. 505, 514 (2016) (citations omitted).

To summarize, the respective law firms seek the following EAJA fees and expenses:

| | |
|---|---|
| Parrish Law Office attorneys' fees | **$22,191.51** |
| Parrish Law Office expenses | **$699.99** |
| McNally Peterson attorneys' fees | **$6,718.76** |
| McNally Peterson paralegal fees | **$1,440.00** |
| McNally Peterson expenses | **$1,662.16** |

### B. It is appropriate to apply a special factor enhancement for Atty. Parrish.

In addition to the inflation adjustment, the EAJA rate may be enhanced using the "special factor" provision in 28 U.S.C. §2412(d)(2)(A)(ii). "We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce v. Underwood*, 487 U.S. at 572. The Seventh Circuit has interpreted it to require "an identifiable practice specialty not easily acquired by reasonably competent attorney or special non-legal skills." *Raines v. Shalala*, 44 F.3d 1355, 1361 (7th Cir. 1995). For example, the enhancement was awarded to an attorney with expertise in "military and conscientious objector law" based on a declaration stating that there were fewer than a dozen such lawyers across the country. *Martin v. Secretary of Army*, 463 F.Supp.2d 287, 293 (N.D.N.Y. 2006). Certain experience can only be gained through

government employment. *U.S. v. Scheingold*, 293 F.Supp.2d 447, 452 (D.N.J. 2003) (enhancement awarded to tax attorney who was a former IRS Special Agent).

Ms. Whitcomb could not locate an attorney in Wisconsin who understood the science of CGM and had experience in the Medicare appeals process. Atty. Pledl was only willing to serve as co-counsel with an attorney who has that expertise. [Pledl Decl. at ¶7] Therefore, it was necessary for Ms. Whitcomb to retain counsel from Pittsburgh, Pennsylvania. Atty. Parrish did not just bring litigation expertise or even Medicare litigation expertise to the case. Her main contributions were scientific knowledge about CGM (she has a B.S.E. in Biomedical Engineering) and the complexities of product approval within the Department of Health and Human Services (she had worked in the DHHS Office of Research Integrity). Ms. Parrish is a member of the American Health Lawyers Association, the National Association of College and University Attorneys, the Council of Science Editors and Society for Research Administrators and has handled Medicare appeals since 1989. http://dparrishlaw.com/attorneys/debra-parrish/ (visited 11/30/2017) There is no way an attorney without this background could acquire this knowledge even with diligent study. Atty Parrish's experience in other CGM Medicare appeals was a bonus.

Atty. Parrish customarily charges $525 per hour in Medicare cases. [Parrish Decl. ¶7]. In this matter she requests an award of her customary rate in view of the substantial effort required over an extended period of time in multiple venues caused by the Secretary's failure to not only render a decision supported by law, but repeatedly rendered tardy in breach of statutory deadlines.

In order to compute the enhanced fee, Atty. Parrish's share must first be backed out of the adjusted rate totals. Atty. Parrish worked 75.72 hours on the case and her adjusted-rate EAJA fee is $14,898.08. (The monthly amounts are: 11/16 – 3.0 - $581.25; 12/16 – 1.6667 - $226.04; 01/17 - .5 - $97.50; 05/17 – 5.92 - $1,161.80; 06/17 – 23.5 - $4,611.88; 07/17 – 1.0 - $196.25;

08/17 – 22.8 - $4,501.30; 10/17 – 17.8332 - $3,522.06.)  Therefore, the firm's basic EAJA fees of $22,191.51 would first be reduced by $14,898.08 and then increased by $39,753.00 ($525 x 75.72).  The Parrish firm's total attorneys' fee request including the enhanced rate is **$47,046.43.**

## CONCLUSION

Plaintiff Jill Whitcomb is the prevailing party and she meets the financial eligibility criteria in the Equal Access to Justice Act. The legal and factual positions asserted to defend this case were not substantially justified. The Secretary should be ordered to pay Ms. Whitcomb's attorneys' fees and expenses in the amounts set out above.

Date: November 30, 2017

Respectfully submitted,

PARRISH LAW OFFICES
Attorneys for Plaintiff

/s/ Debra Parrish
_____
By: Debra Parrish
By: James Pistorino
788 Washington Road
Pittsburgh, PA  15228
TEL    412-561-6250
FAX   412-561-6253
Email   Debbie@dparrishlaw.com

MCNALLY PETERSON, S.C.
Attorneys for Plaintiff

/s/ Robert Theine Pledl
_____
By: Robert Theine Pledl
1233 North Mayfair Road - Suite 200
Milwaukee, WI  53226
TEL    414-257-3399
FAX   414-257-3223
Email   rpledl@mcpetelaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 30, 2017, I electronically filed Plaintiff's Petition for Fees and Costs using the Eastern District of Wisconsin ECF system which will automatically send email notification of such filing to counsel of record for Defendant:

Date: November 30, 2017

/s/ Robert Theine Pledl
_____
Robert Theine Pledl