UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JILL A. WHITCOMB,

      Plaintiff,

v.              Case No. 17-CV-14

ERIC D. HARGAN,
Acting Secretary of the U.S. Department of Health
and Social Services,

      Defendant.

**PLAINTIFF'S REPLY IN SUPPORT OF PETITION FOR FEES AND COSTS**
*CORRECTED VERSION*

## INTRODUCTION

 Ms. Whitcomb's motion for fees should be granted. For EAJA analysis, the Secretary disputes only: 1) whether the Secretary's litigation position was substantially justified; and 2) whether Ms. Parrish's attorneys' fees should be based on her usual and customary rates. Accordingly, all the other aspects of EAJA analysis are conceded.

 With regard to alleged reasonableness/substantial justification, it should be remembered that the Secretary's core position throughout this litigation (and after) has been that a continuous glucose monitor ("CGM") device is not "primarily and customarily used for a medical purpose." That position was unreasonable and without substantial justification from the start. In his opposition, the Secretary simply contradicts this Court's finding that the Secretary's position was unreasonable. Beyond that, the Secretary misstates his own position in the litigation, selectively quotes from cases, and offers the novel theory that the Secretary's position was reasonable because the Secretary has been so consistently wrong. The Secretary did not meet his burden.

 Ms. Whitcomb's motion for fees should be granted.

**DISCUSSION**

**I. THE SECRETARY'S POSITION WAS NOT SUBSTANTIALLY JUSTIFIED.**

   **A. The Secretary's litigation position was and is unreasonable.**

As noted in Ms. Whitcomb's initial filing regarding fees, the Secretary bears the burden of establishing that his position was substantially justified. [Dkt. #23: Plaintiff's Petition for Fees and Costs ("Petition"), at 4] In its Decision, this Court found that the Secretary's denial of CGM coverage was arbitrary and capricious in two ways: 1) in the Secretary's reading of the statute/regulation (which the Court called "unreasonable"); and 2) in light of more than 40 decisions from more than 35 ALJ's finding that CGMs are durable medical equipment ("DME"). [Dkt. #19: 10/26/17 Decision and Order at 12, 14-15] As Ms. Whitcomb noted in her opening papers, *by definition*, a position that is arbitrary and capricious is not substantially justified. *See, e.g.*, BLACK'S LAW DICTIONARY (6th ed.) at 105 ("… willful and unreasonable action without consideration or in disregard of facts or law or without determining principle."). Further, this Court's explicit finding that the Secretary's position was unreasonable eliminates the possibility that the Secretary's position was substantially justified. This is so because all the elements of a "substantial justification" showing require a showing that the position was reasonable. *See U.S. v. Hallmark Const. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000 (reasonable factual basis, reasonable basis in law, reasonable connection between the two). Thus, this Court's finding that the Secretary's position was unreasonable precludes the Secretary from meeting any of the elements of the test and therefore meeting his burden.

The Secretary's response does not explicitly address this Court's arbitrary and capricious finding. Instead, the Secretary challenges this Court's finding that the Secretary's position was unreasonable. [Dkt. #27: Defendant's Response to Plaintiff's Motion for Attorney Fees Under

the Equal Access to Justice Act ("Def. Resp") at 10] ("… it was not unreasonable for the Secretary to conclude that the requested CGM was precautionary …"). Simply disputing this Court's finding that the Secretary's position was unreasonable does not demonstrate that the Secretary's position was substantially justified.

The Secretary's claim that his position was reasonable based on the allegation that a CGM cannot *treat* an illness simply illustrates the fact that the Secretary continues to offer untenable/arbitrary and capricious positions. [Def. Resp. at 8-9] The Secretary offers that his position was reasonable because an "item … must be reasonable and necessary for the treatment or diagnosis of an injury or illness" (42 U.S.C. §1395(y)(1)(A)) and, the Secretary contends, a CGM cannot "treat" an illness. *Id*. As a simple matter of fact, that claim is fallacious because the Secretary has never contested that point. That a CGM was reasonable and necessary for the treatment or diagnosis of Ms. Whitcomb's Type I diabetes was decided by ALJ Bush. [Dkt. #12 – Administrative Record at 31-33 ("The undersigned ALJ finds that a continuous blood glucose monitor is medically reasonable and necessary for [Ms. Whitcomb] …"). It was not contested at the Medicare Appeals Council ("Council"). Finally, it was also affirmatively conceded at the oral argument in this Court on October 10, 2017:

> [Secretary]: … In order to qualify for coverage, three things need to be true. The first thing is that the item or service need to be eligible for coverage in a defined benefit category – here we are talking about durable medical equipment. The second thing that has to be true is that it has to be reasonable and necessary for the diagnosis or treatment of an injury or an illness. And third, it has to not be otherwise excluded.
>
> …
>
> [Judge Jones]: So, let's talk about the second and the third and see if we have a problem there. Is there - does the Secretary contest whether this device is medically reasonable and necessary?
> [Secretary]: For this specific plaintiff, the ALJ did find - and both through – find that it was reasonable and necessary.
> [Judge Jones]: What I am kind of asking you about though is whether the Secretary disputes that ALJ finding at this point?

> [Secretary]: No, **I think that we would find that it was reasonable and necessary** for this specific beneficiary knowing - you know - her record.

[At 10:21:30 – 22:35] (emphasis added). A flatly erroneous statement about the Secretary's position does not make the Secretary's opposition to the EAJA motion substantially justified, much less the Secretary's underlying position in this case.[1] Rather than "reasonable and necessary", the Secretary disputed whether a CGM was "primarily and customarily used for a medical purpose" and there never has been any reasonable basis to conclude otherwise.

**B. An award of fees will further the policy goals of the Equal Access to Justice Act**

Ms. Whitcomb's opening papers contain an extensive discussion of EAJA's history and purpose. Two important reasons for awarding fees under EAJA are: 1) to encourage private litigants to pursue civil actions against the government without being deterred by the cost of litigation; and 2) to compensate parties for the cost of defending against unreasonable government action. *Berman v. Schweiker*, 713 F.2d 1290, 1297 (7th Cir. 1983); *Kholyavskiy v. Schlecht*, 479 F. Supp. 2d 897, 900 (E.D. Wis. 2007). Both of those purposes would be served by a fee award in this case.

**C. An award of fees will also deter future unreasonable litigation conduct.**

Another purpose for awarding EAJA fees is to deter the government from prosecuting or defending cases in which its position is not substantially justified. *Berman*, 713 F.2d at 1297; *Kholyavskiy*, 479 F. Supp. 2d at 900. This Court's "arbitrary and capricious" finding was based, in part, on more than 40 losses at the ALJ level finding that a CGM was DME. Thus, more than 40 adverse decisions did not deter the Secretary from pursuing an unreasonable position. In addition, the Court in the *Finigan* case told the Secretary that his position was "head-scratching."

---

[1] *See also Bloom v. Hargan*, Case No. 16cv121 (D. Vermont) (Crawford, J.) Docket #44 at 3 ("As a final matter, unlike the *Whitcomb* case, the Secretary has neither conceded nor determined that Plaintiff has demonstrated … that Plaintiff's CGM system and supplies are reasonable and necessary.").

*Finigan v. Burwell*, 189 F.Supp.3d 201, 207 n. 6 (D.Mass. 2016). Still the Secretary was not deterred.

The Secretary's effort to address the large number of adverse decisions and the Secretary's failure to respond to them is difficult to understand. On page 10 of the Response, the Secretary offers that the "consistency" with which the Secretary has maintained his erroneous position "highlights his thoughtful and reasonable approach." That claim is without substance. First, simply as a factual matter, it was the Secretary's *inconsistency* that formed one basis for this Court's "arbitrary and capricious" finding. Second, even if it were true, rather than being meritorious, it is actually evidence of unreasonableness in support of a fee award. Then on pages 7 and 11, the Secretary included a quote from the Supreme Court's decision in *Pierce v. Underwood*, 487 U.S. 552 (1988). The Secretary quotes the Supreme Court as follows:

> Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose. **Nevertheless, a string of losses can be indicative; and even more so a string of successes.**

(Emphasis added). However, the Secretary's brief failed to include the last sentence from the quote, thereby changing the import of the passage. Selectively quoting the applicable authorities does not bolster the Secretary's opposition.

In most cases, after an adverse decision, a Court is unsure how an agency will react. As a result, a Court may hope that the simple fact of an adverse decision will cause an agency to change its ways.[2] This is the unusual situation where the Court knows that its decision will not cause the agency to rethink. The Parrish Law Firm represents other CGM users and notified courts (as well as the Council) in other pending cases of this Court's October 26, 2017 decision.

---

[2] This is the position that Judge Duffin found himself in when he denied EAJA fees in the *Whitcomb v. Burwell* case.

Nevertheless, the Secretary continued to advance the same unreasonable/arbitrary and capricious position. For example, on November 13, 2017, in *Bloom*, the Secretary reiterated the rejected position and stated: "The Secretary respectfully disagrees with the reasoning (and conclusions) articulated in the *Whitcomb* decision, which is not binding on this Court, …" *See Bloom v. Hargan*, Case No. 16cv121 (D. Vermont) (Crawford, J.) Docket #44 at 1-3.

Likewise, on December 19, 2017, the Council reversed an ALJ decision that a CGM was DME on the grounds that: "The appellant's CGM system, however, does not have a primary medical purpose because it is a precautionary item." See MAC Docket #M-17-9374 (C. Lewis) at 9-12 (reversing ALJ Midgley's decision finding DME coverage). [*See* attached Ex. A] Thus, this Court's decision has not caused the Secretary to rethink and/or deterred the Secretary from advancing its unreasonable/arbitrary and capricious position.[3]

The *Lewis* decision cited above ably illustrates the Secretary's attitude of defiance. Like Ms. Whitcomb, Ms. Lewis is a Type I diabetic with hypoglycemic unawareness who has been litigating CGM coverage for years. In several previous instances, Ms. Lewis had received favorable decisions regarding CGM coverage, which the Secretary did not appeal, and had become final. In the appealed case, ALJ Midgley issued a decision finding Ms. Lewis' Dexcom G5 CGM device qualified as DME and Ms. Lewis was otherwise eligible for coverage. The Secretary appealed and Ms. Lewis informed the Council of this Court's decision. Nevertheless, the Council reversed ALJ Midgley. In doing so, the Council held:

---

[3] The Secretary has also failed to comply with this Court's Order to authorize Secure Horizons to provide coverage for Ms. Whitcomb's CGM expenses. More than two months after the Court's Order, despite Ms. Whitcomb's demand for compliance, no payment of any kind has been received. Indeed, Ms. Whitcomb's request for payment in accordance with the Court's Order was denied on the basis that it was "untimely." Neither Ms. Whitcomb nor her counsel have received any communication indicating that Secretary has "authorized Secure Horizons to provide coverage for Ms. Whitcomb's continuous glucose monitoring system." [Decision at 16]

1) the Secretary has a policy that it reviews claims *de novo* individually, regardless of prior decisions, even for the same patient/device (thereby virtually ensuring arbitrary and capricious decision making) [*see* Ex. A, p. 9];

2) the Secretary believes that Supreme Court cases stating that collateral estoppel applies to agency actions (*see Astoria Federal Savings and Loan Assoc. v. Solimino*, 501 U.S. 104, 107-8 (1991)) are not binding because the Secretary feels that collateral estoppel should not apply [*Id.*]; and

3) Though the Secretary issued a ruling on January 12, 2017 indicating that, in the Secretary's view, the Dexcom G5 device was "not precautionary" and, therefore, covered, *before* January 12, 2017, *the exact same device* should be considered "precautionary" and, therefore, not covered. [*See* Ex. A, pp.10-11]

Subsequently, the Council remanded the matter back to the ALJ for yet another hearing. Ms. Whitcomb does not seek to litigate the merits of the *Lewis* case here. Rather, the decision there demonstrates that the Secretary is impervious to adverse decisions or authorities and that an EAJA award is necessary to potentially deter the Secretary.

As detailed above, numerous adverse decisions by ALJs, an admonition from one Article III District Judge, an adverse decision from this Court, and sheer common sense have not deterred the Secretary. If attorneys' fees are not awarded, that will signal the Secretary that positions like "a CGM is not primarily and customarily used for medical purposes" are reasonable. Indeed, the Secretary relies on Judge Duffins' earlier denial of an EAJA award in the 2015 case to make such a claim. [Def. Resp. at 11] Hopefully, an award of attorneys' fees here will deter the Secretary from continuing to issue unreasonable denials.

{Client Documents/230394/000/00047392.DOC}                                7

Case 2:17-cv-00014-DEJ   Filed 01/05/18   Page 7 of 12   Document 30

The Secretary did not meet his burden of showing that his position was substantially justified and an EAJA award should be made.

## II. ATTY. PARRISH'S USUAL AND CUSTOMARY RATES SHOULD APPLY

With regard the fees themselves, the Secretary only disputes whether Ms. Parrish's usual and customary rates should apply.

The Secretary claims that: "No scientific knowledge or otherwise specialized skill were required to adequately represent Plaintiff." [Def. Resp. at 15] That statement is belied by the actual decision and record in this case. In its decision finding that the Secretary's denial was arbitrary and capricious, this Court cited to a list of favorable CGM ALJ decisions compiled by the Parrish Law Firm. [Decision at 14] HHS' ALJ decisions are not generally publicly available. Thus, it is only because of Ms. Parrish' specialized knowledge and background representing diabetic CGM users (including Ms. Whitcomb) that that evidence was available.

Beyond actual evidence that formed a basis for the Court's decision, Ms. Parrish's specialized knowledge and experience was required to competently represent Ms. Whitcomb (and CGM users more generally). Only someone with a technical/biology background would be able to understand the differences between the various CGM devices, fingersticks and how they work, and diabetic conditions to both put forth Ms. Whitcomb's arguments/claims and to rebut the Secretary's. In addition, a detailed knowledge of the Medicare appeals process was/is required (an area that this Court described as "tricky"). Ms. Parrish brought that specialized background and knowledge to bear in successfully representing Ms. Whitcomb.

Although Mr. Pledl is an excellent attorney, he does not share Ms. Parrish's background and certainly would not have had access to the same evidence. In this case, Mr. Pledl primarily

served as local counsel (though he also contributed substantively to researching, drafting and reviewing briefs).

The Secretary appears to complain that the fees incurred in handling this matter far exceed the yearly cost of a CGM device. [Def. Resp. at 14] There is no doubt that that is true. Likewise, there is no doubt that the Secretary is entirely to blame for that cost. As an initial matter, the Secretary could have not issued denials on unreasonable/arbitrary and capricious bases. Further, at any time, the Secretary could have reconsidered its approach. Instead, even the Secretary's arguments opposing EAJA fees shows that he prefers litigation. It would certainly be inequitable to force Ms. Whitcomb (or her attorney) to bear the costs of the Secretary's misguided position and preventing that from occurring is one purpose of EAJA.

### III. COUNSEL ARE ENTITLED TO SUPPLEMENTAL FEES

Fees incurred to litigate a fee petition are also compensable. *Comm'r, INS v. Jean*, 496 U.S. 154, 163-65 (1990). Atty. Parrish is filing a second declaration regarding additional fees incurred to litigate the EAJA fee request and seeking to enforce the Court's judgment as described in Footnote 3 above.

Since the initial submission, the Bureau of Legal Statistics did release the All Urban Consumer CPI for November 2017. It is 246.7 which is unchanged since October 2017. https://www.bls.gov/news.release/cpi.t01.htm (visited 01/04/2018.) The CPI for December and January are not yet available. Therefore, the adjustment factor is 1.58 and the adjusted rate is $197.50. The following table contains the Parrish firm's supplemental fees:

| Month | Adjusted Rate | Hours-Parrish | Adjusted Fee-Parrish | Hours-Other Lawyers | Adjusted Fee-Other Lawyers |
|---|---|---|---|---|---|
| November 2017 | $197.50 | 10.17 | $2,008.58 | 1.25 | $246.88 |
| December 2017 | $197.50 | 3.42 | 675.45 | 10.50 | 2,073.75 |
| January 2018 | $197.50 | 2.00 | 395.00 | 9.90 | 1,955.25 |
| **TOTAL** | | **15.59** | **$3,079.03** | **21.65** | **$4,275.88** |

[Debra Parrish Second Declaration – Exhibit A]. Therefore, Parrish Law Offices' total fees and costs computed under the **standard EAJA rates** are:

| | |
|---|---|
| All attorneys' fees – original submission | **$22,191.51** |
| All attorneys' fees – supplemental | **$7,354.91** |
| Expenses | **$699.99** |
| **TOTAL** | **$30,246.41** |

Atty. Parrish's share of the supplemental time is 15.59 hours. The Parrish firm's fees and costs based on the **enhanced rate** of $525.00 are as follows:

| | |
|---|---|
| Atty. Parrish enhanced fees – original submission | **$39,753.00** |
| Other lawyers EAJA fees – original submission | **$7,293.43** |
| Atty. Parrish enhanced fees – supplemental | **$8,184.75** |
| Other lawyers EAJA fees – supplemental | **$4,275.88** |
| Expenses | **$699.99** |
| **TOTAL** | **$60,207.05**[4] |

Atty. Pledl did participate in the drafting of this brief, but no supplemental fees are being requested. McNally Peterson's request for fees and expenses is as follows:

| | |
|---|---|
| EAJA attorneys' fees | **$6,718.76** |
| Paralegal fees | **$1,440.00** |
| Expenses | **$1,662.16** |
| **TOTAL** | **$9,820.92** |

## CONCLUSION

Plaintiff Jill Whitcomb is the prevailing party and she meets financial eligibility criteria. The Secretary did not meet his burden of showing that the legal positions taken in this case were substantially justified, and an EAJA award should be made.

---

[4] This amount was incorrect in Plaintiff's reply which was filed on 01/04/2018 at Dkt. #28.

{Client Documents/230394/000/00047392.DOC}    10

Case 2:17-cv-00014-DEJ   Filed 01/05/18   Page 10 of 12   Document 30

Date: January 5, 2018				Respectfully submitted,

						PARRISH LAW OFFICES
						Attorneys for Plaintiff

						/s/ Debra Parrish
						_____

						By: Debra Parrish
						By: James Pistorino
						788 Washington Road
						Pittsburgh, PA  15228
						TEL	412-561-6250
						FAX	412-561-6253
						Email	Debbie@dparrishlaw.com


						MCNALLY PETERSON, S.C.
						Attorneys for Plaintiff

						/s/ Robert Theine Pledl
						_____

						By: Robert Theine Pledl
						1233 North Mayfair Road - Suite 200
						Milwaukee, WI  53226
						TEL	414-257-3399
						FAX	414-257-3223
						Email	rpledl@mcpetelaw.com

{Client Documents/230394/000/00047392.DOC}			11

Case 2:17-cv-00014-DEJ   Filed 01/05/18   Page 11 of 12   Document 30

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 5, 2018, I electronically filed Plaintiff's Petition for Fees and Costs – Corrected Version using the Eastern District of Wisconsin ECF system which will automatically send email notification of such filing to counsel of record for Defendant:

Date: January 5, 2018

/s/ Robert Theine Pledl

———————————————

Robert Theine Pledl