# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JILL A. WHITCOMB,**

    Plaintiff,

    v.                                                       Case No. 17-CV-14

**ALEX M. AZAR II,**[1]
   *Secretary of Health and Human Services,*

    Defendant.

## DECISION AND ORDER
## GRANTING PLAINTIFF'S PETITION FOR FEES AND COSTS

    Jill A. Whitcomb is a Type I diabetic who is unable to detect sudden drops in her blood sugar levels. To manage her symptoms, she sought coverage for a continuous glucose monitor, a device that would alert her when her blood sugar drops below a certain level. After her insurance plan denied her claim, Ms. Whitcomb requested and received a hearing before an administrative law judge. The ALJ determined that the plan was required to cover the continuous glucose monitor. On appeal, however, the Medicare Appeals Council—acting on behalf of the Secretary of the U.S. Department of Health and Human Services—found that continuous glucose monitors are not covered by Medicare as durable medical equipment.

---

[1] Alex M. Azar II assumed the position of Secretary of the U.S. Department of Health and Human Services in January 2018 and, therefore, should be substituted as the named defendant in this action. *See* Fed. R. Civ. P. 25(d).

On judicial review under 42 U.S.C. § 405(g), this Court reversed the Secretary's decision and remanded the matter with instruction to authorize the plan to provide coverage for Ms. Whitcomb's continuous glucose monitoring system. *See* Decision and Order, ECF No. 19. The Court determined that the Appeals Council erred in concluding that continuous glucose monitors are not "primarily and customarily used to serve a medical purpose" and that the agency's interpretation of that definitional phrase was unreasonable. *Id.* at 10–14 (citing 42 C.F.R. 414.202). The Court further determined that the Appeals Council's decision to deny coverage to Ms. Whitcomb was arbitrary and capricious given that, on a number of occasions, the agency had provided coverage to others for the same monitoring device. *Id.* at 14–15.

As the prevailing party, Ms. Whitcomb has moved for over $70,000 in attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. Plaintiff's Petition for Fees and Costs, ECF No. 23. The Secretary opposes the fee request, arguing that its position in this litigation was substantially justified and that no special factor justifies the rate increase sought by one of Ms. Whitcomb's attorneys. Defendant's Response to Plaintiff's Motion for Attorney Fees, ECF No. 27. Because the Secretary's position was unreasonable and because Ms. Whitcomb's attorney was especially well-versed in the subject matter of this litigation, Ms. Whitcomb is entitled to the full fee award requested. The Court therefore will grant her petition.

2

## I. Whether the Secretary's position in this litigation was substantially justified

A party who prevails in litigation against the United States is entitled to fees and other expenses under the EAJA unless the government demonstrates that its position "was substantially justified." 28 U.S.C. § 2412(d)(1)(A). According to the Supreme Court, the United States' position is substantially justified if it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). An incorrect position can still be justified "if it has a reasonable basis in law and fact." *Id.* at 566 n.2. Thus, to satisfy its burden, the government "must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the theory propounded." *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006) (citations omitted).

Throughout this litigation, the Secretary took the position that continuous glucose monitors do not qualify as durable medical equipment because they do not serve a primary medical purpose. *See* Transcript 10, ECF No. 12-2 ("[Continuous glucose monitoring] systems . . . do not have a primary medical purpose because they are precautionary items."). Continuous glucose monitors alert users when their glucose levels fall below a certain level. However, because these monitors do not actually measure glucose in the blood, users must confirm their levels though the traditional finger-stick method. The Secretary therefore maintains that continuous glucose monitors are simply used as an additional precaution and cannot, on their

3

own, be used to make treatment decisions. According to the agency's own interpretative guidance, precautionary equipment is presumptively non-medical.

The Secretary's position is not substantially justified, as there is no reasonable basis for arguing that continuous glucose monitors are not primarily and customarily used to serve a medical purpose. *First*, the Secretary's position is inconsistent with the plain terms of the regulatory definition of durable medical equipment found in 42 C.F.R. § 414.202. Equipment falls within that definition only if, among other requirements, its primary use serves a medical (rather than non-medical) purpose. The definition does not require such equipment to be the primary (rather than secondary) device serving a medical purpose or require such equipment to serve a primary (rather than secondary) medical purpose. Consequently, the fact that continuous glucose monitors must be used in conjunction with another device is irrelevant to § 414.202.

*Second*, the Secretary's position that continuous glucose monitors do not qualify as durable medical equipment because they are precautionary devices is unreasonable. The Secretary's argument appears to be that such monitors do not serve a medical purpose because they are precautionary and precautionary-type equipment is non-medical. That circular reasoning is entirely unhelpful. The term "precautionary" is not used in the Social Security Act or its implementing regulations. It is found instead in the Medicare Benefit Policy Manual, the agency's interpretative guidance for the regulations. *See* United States Centers for Medicare & Medicaid Services Pub. 100-02, *Medicare Benefit Policy Manual*, Ch. 15,

4

§ 110.1(B)(2). The only example of precautionary equipment mentioned in the Manual—a preset portable oxygen unit— is not at all comparable to the equipment at issue here. A preset portable oxygen unit is purely an emergency, back-up device. Conversely, continuous glucose monitors are used by diabetics to continuously and automatically monitor glucose levels in the tissue beneath their skin. Their primary and customary use clearly is a medical one. The Secretary remains unable to explain what non-medical purpose it believes these monitors serve. Thus, the Secretary's reliance on the Manual for construing what it means to serve a medical purpose was unreasonable.

The Secretary's other arguments are unavailing. In opposing Ms. Whitcomb's fee request, the Secretary maintains that continuous glucose monitors are not entitled to coverage because they are not "reasonable and necessary for the diagnosis or treatment of an injury or illness." Def.'s Resp. 8 (citing 42 U.S.C. § 1395y(a)(1)(A)). But the Secretary conceded this point in earlier proceedings. *See* Decision & Order 15 ("[A]t oral argument, the Secretary indicated through counsel that it was not contesting the ALJ's findings as to the remaining statutory elements."); *see also* Defendant's Response to Plaintiff's Request for Judicial Review 21, ECF No. 16 (acknowledging that Ms. Whitcomb's continuous glucose monitor "may be reasonable and necessary").

Furthermore, the alleged consistency of the Secretary's argument, *see* Def.'s Resp. 10–11, does not render its position substantially justified. In fact, this "foolish consistency"—which the Secretary continues to propound despite this and other

5

court's adverse decisions, *see, e.g.*, *Finigan v. Burwell*, 189 F. Supp. 3d 201, 207 n.6 (D. Mass. 2016) (referring to the Secretary's position as "head-scratching"); *Bloom v. Azar*, Case No. 5:16-cv-121, 2018 U.S. Dist. LEXIS 15908, at *26–31 (D. Vt. Jan. 29, 2018) (finding that the Appeals Council erred in determining that continuous glucose monitors do not primarily and customarily serve a medical purpose)—demonstrates the unreasonableness of the Secretary's position. *See Underwood*, 487 U.S. at 569 (noting that "a string of losses can be indicative" of a position that is not substantially justified).

## II. Whether a special factor exists to justify attorney fees above the statutory rate

Courts may award attorney fees in excess of the statutory rate—$125 per hour—if "a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). According to the Supreme Court, the special-factor exception "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question." *Underwood*, 487 U.S. at 572. "[T]he special skill requirement of the statute can be defined in terms of either an identifiable practice specialty not easily acquired by a reasonably competent attorney or special non-legal skills such as knowledge of a foreign language." *Raines v. Shalala*, 44 F.3d 1355, 1360 (7th Cir. 1995) (citing *Underwood*, 487 U.S. at 572). In determining whether to apply the special-factor exception, "the appropriate inquiry is whether the individual case presents such an 'unusual' situation that it *requires* someone of 'specialized training and expertise unattainable by a competent attorney through a diligent study of the governing

6

legal principles.'" *Raines*, 44 F.3d at 1361 (quoting *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990)).

Ms. Whitcomb requests that one of her attorneys, Debra Parrish, be compensated at her customary rate for Medicare appeals, $525 per hour. *See* Pl.'s Pet. 14–15. According to Ms. Whitcomb, she "could not locate an attorney in Wisconsin who understood the science of [continuous glucose monitors] and had experience in the Medicare appeals process." *Id.* at 14. So she retained Ms. Parrish, an attorney from Pittsburgh, Pennsylvania, who possesses a biomechanical engineering degree, used to work for the Department of Health and Human Services, and has represented a number of other individuals who sought Medicare coverage for a continuous glucose monitor. The Secretary argues that the special-factor exception should not be applied in this case because "no scientific knowledge or otherwise specialized skills were required to adequately represent" Ms. Whitcomb. *See* Def.'s Resp. 12–15.

Ms. Parrish's specialized training and expertise constitutes a special factor justifying an increase in the statutory attorney fee rate for her services. This case turned on whether continuous glucose monitors are primarily and customarily used to serve a medical purpose. Ms. Parrish's scientific background and familiarity with how such monitors operate were crucial in resolving that issue. Moreover, this Court's arbitrary-and-capricious finding was based, in part, on "numerous final decisions of the Secretary in which coverage was provided for the same device at issue here." Decision & Order 14. Those decisions, which are not generally available

7

to the public, were compiled by Ms. Parrish's law firm. Consequently, the favorable outcome obtained by Ms. Whitcomb required the assistance of someone, like Ms. Parrish, who had a specialized, non-legal skill set. Ms. Parrish therefore is entitled to her customary rate.

### III. Conclusion

Accordingly, for all the foregoing reasons, Ms. Whitcomb's Petition for Fees and Costs is granted.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Jill A. Whitcomb's Petition for Fees and Costs, ECF No. 23, is **GRANTED**. Ms. Whitcomb is **AWARDED** fees and expenses in the amount of $70,027.97.

Dated at Milwaukee, Wisconsin, this 12th day of June, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge